```
             UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

PAMULA ROBINSON,               )
                               )
         Plaintiff,            )
                               )
    v.                         ) Civil Action No. 05-1212 RBW
                               )
HENRY PAULSON,                 )
  Secretary of the Treasury,   )
                               )
         Defendant.            )
_____)
```

### REPLY TO PLAINTIFF'S OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

On November 15, 2006, following discovery in this action, the Defendant filed a Motion for Summary Judgment. On December 29, 2006 the Plaintiff opposed the Motion, but proffered no statement in response to the 32 enumerated facts set forth and properly supported in Defendant's Statement Of Material Facts Not In Genuine Dispute ("Statement Of Material Facts").  On January 25, 2007, Plaintiff filed, without leave of Court, Plaintiff's Supplement To Her Opposition To Defendant's Motion For Summary Judgment, still failing to proffer a statement addressing the specifically enumerated Statement Of Material Facts.  Defendant submits that Plaintiff has offered no basis to proceed further and that summary judgment in favor of Defendant is appropriate.

## II. ARGUMENT

Plaintiff has not specifically addressed the factual statements presented in the statement of material facts accompanying Defendant's filings.

> To survive summary judgment, the nonmoving party must offer more than mere allegations, Anderson [v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)], by going "beyond the pleadings and by its own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
>                         * * *
> [L]egal conclusions "cloaked" as facts are not sufficient to create a genuine issue of material fact.  And, of course, the parties are obligated, pursuant to Local Rule 108(h) [now Local Civ. R. 7(h) and 56.1], to identify the material facts and point to evidence of record that supports their respective positions. Jackson v. Finnegan, Henderson, Farabow, Garrett, 101 F.3d 145, 150-51 (D.C. Cir. 1996).

United States v. BCCI Holdings, 977 F. Supp. 1, 6 (D.D.C. 1997), aff'd mem., 159 F.3d 637 (D.C. Cir. 1998).

> In determining a motion for summary judgment, Local Civil Rule 7(h) provides that "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in a statement of genuine issues filed in opposition to the motion."

Reliance Standard Life Ins. Co. v. Matini, Civil Action Nos. Nos. 05-1101 HHK and 05-2254 HHK, 2006 WL 1980260, *1 (D.D.C. July 12, 2006) (Because the plaintiff provided no

countervailing statement of genuine issues of material fact, Defendant's Statement of Material Facts Not in Dispute was "deemed admitted in its entirety"). Plaintiff has not addressed the facts identified and supported by Defendant; and they should be deemed admitted. See Local Civ. R. 7(h); 56.1.

In any event, Plaintiff's opposition states that the issue in this case is whether David Geber discriminated against the Plaintiff when he announced the position at issue as a GS-512 series vacancy. Plaintiff's Opp. at 24-26.[1] Plaintiff's opposition, thus, makes much of the fact that Mr. Geber classified Vacancy APB-03-138MM as a GS-512 series position, rather than a GS-343 position. See id. at 30-32. As can be easily discerned from the Defendant's Statement Of Material Facts, Defendant has fully documented why the decision was made to classify the position as it was:

> 2. In February 2002, the Commissioner of the Internal Revenue Service initiated a freeze on all GS-343 occupational series vacancies. See Plaintiff's Response To Request For Admission Nos. 3-4; Robinson Depo. at 66-67 and Robinson Depo.

---

[1] Plaintiff's initial recitation of her claim indicates that Geber changed the occupational series "from 512 to 343". Plaintiff's Opp. at 24. She later correctly notes that the change was "from 343 to 512." See id. at 26.

Exhibit 10; Sprott Personal Depo. at 10-11 and Sprott Personal Depo. Exhibit 3.

3. The decision to impose the freeze on GS-343 positions was made without regard to race and was not made in attempt to discriminate against Plaintiff or members of her race. See Plaintiff's Response To Request For Admission No. 4; Robinson Depo. at 66-67 and Robinson Depo. Exhibit 10.

4. The Appeals Division was given an Approved Staffing Plan which allowed for seventy-five (75) GS-343 analysts to remain in Appeals. See Babers Depo. 58-62, 66 and Babers Depo. Exhibit 7 (April 7, 2003 Memorandum For Acting Commissioner); Robinson Depo. at 67-70 and Robinson Depo. Exhibit 11.

5. The IRS offices needed to reclassify GS-343's into a more appropriate series in order to meet the Agency's approved staffing plan. Id.; Geber Depo. at 29; Robinson Depo. at 67-70.

6. David Geber is now retired, but was formerly Director, Tax Policy and Procedure for Large and Mid-Sized businesses, at the Agency. (Geber Depo. at 23-24, 27-28, 37).

7. In response to the freeze in 2002, David Geber was instructed to convert his eligible employees from GS-343 to GS-512 series. (Geber Depo. 29-30, 50, 55-56).

8. David Geber converted Caucasian and African-American employees from 343 to 512 series during the freeze in 2002. (Geber Depo. at 29-30, 51)

9. Mr. Geber requested the vacancy announcement that was given Vacancy Number APB-03-138MM; and Geber was the recommending official for the Senior Analyst Position at issue in this case. Complaint, ¶¶ 1, 20, 24; Geber Depo. 82, 93.

10. Mr. Geber's decision to advertise the vacancy announcement that was given Vacancy Number APB-03-138MM as a GS-512 occupational series position rather than a GS-343 occupational series position was based on the freeze implemented in filling GS-343 series positions; and the race of any applicant or potential applicant played no role in his decision. Geber Depo. at 44, 94; Robinson Depo. at 66-67, 103.

11. In May 2003, Plaintiff applied for the position of Senior Program Analyst, Vacancy Number APB-03-138MM. Complaint, ¶¶ 1, 17.

12. Mr. Carson Sprott, a human resources specialist, deemed the Plaintiff not qualified for the position announced in Vacancy Number APB-03-138MM. See Robinson Depo. at 62-63 and Robinson Depo. Exhibit 8 at 1-3; Sprott Personal Depo. at 37-38, 43, 45-46, 48-49, 80 and Sprott Personal Depo. Exhibit 14.

13. Carson Sprott assessed the Plaintiff's application and found that the Plaintiff was not qualified. See Plaintiff's Response To Request For Admission Nos. 12-13; Robinson Depo. at 62-63 and Robinson Depo. Exhibit 8; Sprott Personal Depo. at 43.

14. Plaintiff had never held a GS-512 series position. Complaint, ¶¶ 9-10; Plaintiff's Response To Request For Admission No. 17; Geber Depo. at 43-44.

15. It was Mr. Sprott's understanding that the 512 series vacancy required specialized experience at the next lower grade, which the Plaintiff did not possess. See Sprott Personal Depo. at 43-45, 64-68; Plaintiff's Response To Request For Admission Nos. 12-14; Robinson Depo. at 62-63, 111-12 and Robinson Depo. Exhibit 8).

Statement Of Material Facts, ¶¶ 2-15.

Plaintiff's own admission makes clear that the imposition of the freeze was made without regard to race. See Plaintiff's Response To Request For Admission No. 4 ("To the extent she must respond: Plaintiff admits the Deputy Commissioner's decision to 'impose[] a freeze on filing [sic] all vacant analyst and related positions in the GS-343 and 301 occupational series' was made without regard to race. . .'") See Plaintiff's Response To Request For Admission No. 4. (Copy Attached). Thus, Plaintiff's extended effort to show that the position advertised was similar to an earlier position performed by a person in the 343 series is misguided. Whether the change to a 512 position was logical or not, it was made to satisfy the directive from the Deputy Commissioner, whose directive was made free of any racial motive. Id.

Plaintiff nevertheless attempts to argue, without foundation, that Mr. Geber's decision to advertise the vacancy at issue as a 512 position would have been different had Plaintiff been of a different race.[2] Her assertion is

---

[2] As suggested in support of Defendant's Motion, it is doubtful that Plaintiff has established a prima facie case. Nevertheless, the Court of Appeals has recently noted that what is a prima facie case is somewhat situation-specific. See Czekalski v. Peters, No. 05-5221, slip op. at 9-10 (D.C. Cir. Feb. 2, 2007). Rather than focus on this aspect, and

without support.  Indeed, Appeals consistently made efforts to satisfy the upper management directive that Appeals (like other components of the IRS) limit the number of non-professional series positions.  See Geber Depo. at 50-52, 68-69, 79.

Plaintiff argues that after the decision to announce Vacancy APB-03-138MM as a GS-512 position, Mr. Geber managed to secure permission to fill some other 343 positions in

---

because even plaintiff has admitted the existence of a legitimate non-discriminatory reason for the freeze, it makes better sense to proceed to assess the evidence, including that legitimate reason for posting the vacancy as a 512 position.

Plaintiff's argument, however, that she was the victim of discrimination when vacancy APB-03-138MM was announced as a GS-512 position is without merit.  If the announcement itself was an adverse action, she has not alleged it.  See Complaint, ¶¶ 1, 24 (alleging claim for denying plaintiff a promotion).  Even if she were to amend the complaint to assert a claim that the announcement itself was discrimination, then she was untimely in seeking counseling for the asserted violation. See Complaint, ¶¶ 7, 17 (Vacancy Announcement in place by May 15, 2003, when Plaintiff applied for the position and Plaintiff did not seek counseling until July 10, 2003); see also Sprott Personal Depo. at 10-13 and Exhibits 3-5 (The position was announced and opened by May 5, 2003); 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."); Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir. 1995); Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) (untimely exhaustion of administrative remedies is a defense).

-7-

Appeals around May 2003. See Plaintiff's Opp. at 36. Plaintiff argues that "Appeals requested to be excluded from the freeze on May 23, 2003, within days of the vacancy period for the selection at issue, and the request was granted on June 9, 2003, prior to the selection at issue." Id. Plaintiff, however, ignores the fact that before securing that permission, Appeals had documented that all of the efforts to reduce the numbers of 343 positions in Appeals had been successful in reducing the number of 343 positions to the limit imposed by management. See Geber Depo at 75-80, and Geber Depo. Exhibits 10-11 (Plaintiff's Exhibits 15-16). Specifically, by April 7, 2003, Appeals had taken steps to reduce its 343 and related non-professional series positions, but was not yet there. See Plaintiff's Exhibit 15 (noting on April 7, 2003, that "Appeals began the freeze with an on-rolls count of 112. After actions processed last week, we will be down to 85, and we are getting closer to our target of 75.")[3]

---

[3] The April 7, 2003 memorandum noted that to meet the goal would require Appeals to follow through on plans that remained in the works. See Plaintiff's Exhibit 15 ("Actions taken to date include: returned employees on detail in the 343 series to their home positions, . . . initiated paperwork to move 27 employees out of the series. . . These actions . . . will bring us under the new APS of 75 and accommodate the exceptions requested in this memo.")

Appeals' May 23, 2003 Memorandum seeking an exception noted:

> At the implementation of the Commissioner's hiring freeze for all analyst positions in the GS-343 and/or related occupations (i.e. 301), Appeals had an onboard count of 112 incumbents.  Appeals has met its targeted occupancy rate of 75 or below by reducing the number of employees in these series positions.
>
> As a result, we are requesting that Appeals be granted an exclusion from the Commissioner's hiring freeze for analyst and related positions...

Geber Depo. at 79-80; Plaintiff's Exhibit 16.

Thus, Appeals had made great progress in limiting the number of its 343's, and announcing Vacancy APB-03-138MM as a GS-512 position contributed to being able to advise upper management that Appeals was on target.  See id.; Geber Depo. at 80 ("It appears that appeals did meet its target.")

Plaintiff argues that the agency showed pretext when it failed to go back and re-advertise Vacancy APB-03-138MM as a 343 when it learned in June that having met its goals, it was free of the earlier freeze restrictions.  Plaintiff's Opp. at 36.  But, she has simply failed to offer evidence that this failure to re-advertise a position that was underway was motivated by race.  The request to advertise the position was forwarded to personnel by the end of April 2003, the position opened May 5, 2003 and closed May 19,

2003. See Sprott Personal Depo. at 10-13 and Exhibits 3-5. No purpose would have been served by re-advertising the position at the 343 series in June, except to increase the number of 343's in Appeals. And such a goal was clearly contrary to the desire of management. See Plaintiff's Response To Request For Admission No. 4; Geber Depo. at 92-94.

What remains clear is that there was an Agency-wide movement to reclassify existing GS-343 positions into more descriptive professional series, such as 512 and 930 series positions in the office of Appeals. Plaintiff's opposition alleges that Mr. Geber announced Vacancy APB-03-138MM as a GS-512 position, while he had converted his remaining employees to the 930 series. See Plaintiff's Opp. at 37. Whether Mr. Geber converted his employees to the 512 or 930 series is immaterial. The fact remains, Mr. Geber was directed to, and did, convert his employees out of the 343 series and into more descriptive series such as 512 and 930.

Plaintiff suggests that she could have applied for the position if it had been advertised as a 930 Series. See Plaintiff's Opp. at 37 and n.41. Plaintiff is seeking a promotion from the GS-14 level. See Complaint at 1-2. She is wrong to suggest that her prior experience as a 930 would

qualify her for a 930 series position at a GS-14 grade.  The problem was that Plaintiff did not have a year in grade at the GS-13 level in either the 512 or the 930 series.  <u>See</u> Sprott Personal Depo. at 74 and Plaintiff's Qualifications Record (excerpt from Sprott Personal Depo. Exhibit 5) (copy attached) (showing Plaintiff's only experience in a 930 series position was as a "GS-930-12").  Because Plaintiff would not have qualified for a 930 series position at the GS-14 level, it makes no sense for her to argue that the agency discriminated against her by not advertising the position at issue as some other position for which she also was not qualified.

    Plaintiff's Supplemental filing fails otherwise to produce evidence of pretext.  Plaintiff appears to claim that because the other employees in Appeals whom Mr. Geber redesignated were redesignated to the 512 series and then to the 930 series after the announcement at issue, this somehow shows pretext.  In fact, what was significant was that the 343 series positions were being, where possible, redesignated to series other than 343 and 301 to reach a goal of 75 in appeals, as directed by the Deputy Commissioner.  Mr. Geber, who retired from the agency before his deposition, was not able to recall for sure whether all

-11-

of the changes to the 512 and 930 positions occurred before or just around the time of the announcement at issue. Mr. Geber testified:

> Q: During your tenure as a manager in appeals, you inquired on behalf of your subordinates as to eligibility of employees for conversions from series 343 to 512 positions; isn't that correct?
>
> A: I checked with human resources to see what the requirements were for the 512 series, and then when I had that information, I spoke to each of my 343's and said, are you qualified, do you qualify? If so, do you have any objection to being converted since the commissioner wants to reduce the number of 343's?
>
> Q: And when did you do this?
>
> A: It would have been prior to – either prior to the announcement of this position or concurrent with – probably prior to – in fact, I would be almost positive it was prior to. That is why I would have announced this as a 512.

Geber Depo. at 44 (emphasis added). Plaintiff has submitted with her Supplemental Submission declarations that verify that these changes were, in fact, made to other employees' positions, consistent with Mr. Geber's recollection, although, as he said in his deposition, they may have been accomplished shortly after the May 5, 2003 Vacancy Announcement at issue. See Geber Depo. at 44, 50-51 ("Q: Who had you converted from 343 to a 512? A: Gene Perdue, Sandy Cohen, Michelle Topel, possibly, I am not positive,

-12-

Jacqueline Harris."); Plaintiff's Exhibit 31, ¶¶ 5-7 (verifying that Cohen was approached in Spring 2003 about changing his series and that he was changed first to a 512, then to a 930 after he noted that "the 930 series was the most rational"); Plaintiff's Exhibit 32, ¶ 4 (same regarding Perdue).

Likewise, whether Mr. Geber announced the position at issue as a 512 or a 930 series position is immaterial. The Plaintiff admits that her only experience at the GS-13 level was in the 343 series. (Robinson Depo. 26-27). In order to qualify for higher graded positions, one must have experience in the next lower grade. (See Sprott Personal Depo. at 37). Since the Plaintiff did not have experience at the GS-13 level in either the 930 or the 512 series, the Plaintiff was not qualified to apply for a promotion to the GS-14 level in either of those specialized series.

Plaintiff's opposition also alleges discrimination because Mr. Geber did not seek an exception to the freeze, or wait until after the freeze to announce Vacancy APB-03-138MM in the GS-343 series. See Plaintiff's Opp. at 12. Mr. Geber had no need to seek an exception to the freeze. The Agency was purposefully moving away from generalized 343 series positions and toward more specific, professional

series positions.  See Geber Depo. at 63.  Mr. Geber was already converting his eligible employees out of the 343 series.  Id. at 44.  His alleged "failure" to go against the Agency-wide movement and to seek an exception to the freeze is not evidence of discrimination.  Rather, it is evidence that he was following Agency directives and working to reduce the number of 343 series positions in his division. See Geber Depo. at 69 ("I wanted to comply with the directive to reduce the 343's").  To have Mr. Geber convert his current employees out of the 343 series, only to announce a new opening in the 343 series without a reason, would be contradictory to the mission of the Agency at that time.

    Plaintiff's opposition further alleges that throughout the selection process, Mr. Geber was confronted with a choice between two candidates.  See Plaintiff's Opp. at 30. This allegation is unfounded.  Mr. Geber requested that the vacancy be announced nation-wide and include posts of duty in Washington, DC, St. Louis, or Los Angeles.  Geber Depo. at 53 and Geber Depo. Exhibit 6 at 2.  Mr. Geber had no way of knowing who would even apply for the position, let alone their race.  See Geber Depo. at 94.  Mr. Geber only became involved in the selection process after the vacancy closed

and a list of qualified applicants was forwarded by Carson Sprott.  <u>See</u> Geber Depo. at 57.  It was then that Mr. Geber learned that Sheila Jones was the only qualified applicant. <u>Id</u>.  As such, Mr. Geber was not choosing between an African-American and a Caucasian applicant.  Mr. Geber was selecting the only qualified applicant from the list supplied by Carson Sprott.  Since Carson Sprott did not know the applicants' race, the list which Mr. Geber received could not have been constructed through discriminatory means.  <u>See</u> Sprott Personal Depo. at 14, 61, 63.

    Plaintiff's opposition also theorizes a conspiracy between Carson Sprott and Mr. Geber.  <u>See</u> Plaintiff's Opp. at 24, 33.  Both Mr. Sprott and Mr. Geber have stated that they did not have contact about the choice to advertise the position as a series 512 position.  <u>See</u> Sprott Personal Depo.  at 61-62; Geber Depo. at 46.  Plaintiff alleges error on Mr. Sprott's part because he did not contact the Plaintiff to better decipher her qualifications.  <u>See</u> Plaintiff's Opp. at 11.  It is undisputed, however, that Mr. Sprott did not know Plaintiff's race at the time he acted. <u>See</u> Sprott Personal Depo. at 1, 14, 61-63.

    In light of the legitimate, non-discriminatory reason for advertising the position as a 512 series position at the

-15-

grade 14 level, and given Plaintiff's lack of qualifications for such a position (and similar lack of qualifications for a 930, grade 14 position), she cannot establish that the decision made "gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).

### III.   CONCLUSION

Plaintiff's remaining claims regarding the agency's asserted discriminatory actions are either unsupported or rely on fanciful leaps of faith far above logical inferences that a reasonable juror might make based on the evidence. For these reasons and those previously set forth in support of Defendant's Motion For Summary Judgment, judgment should be entered in favor of Defendant in this action. Accordingly, the Defendant respectfully requests that the

Court grant Defendant's Motion for Summary Judgment and dismiss this case with prejudice.

                Respectfully submitted,

                _____
                JEFFREY A. TAYLOR, DC Bar #498610
                United States Attorney

                _____
                RUDOLPH CONTRERAS, DC Bar #434122
                Assistant United States Attorney

                _____
                W. MARK NEBEKER, DC Bar #396739
                Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing reply has been made through the Court's electronic transmission facilities on this 15th day of February, 2007.

```
                                    _____
                                    W. MARK NEBEKER
                                    Assistant United States Attorney
                                    555 4th Street, N.W.
                                    Civil Division
                                    Washington, DC  20530
                                    (202) 514-7230
```