UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAMULA ROBINSON,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )  Civil Action No. 05-1212 RBW
                                    )
HENRY PAULSON,                      )
  Secretary of the Treasury,        )
                                    )
            Defendant.              )
_____)

AMENDED REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION

On November 15, 2006, following discovery in this
action, the Defendant filed a Motion for Summary Judgment
with Defendant's Statement Of Material Facts Not In Genuine
Dispute ("Statement Of Material Facts").  On December 29,
2006 the Plaintiff opposed the Motion.  On January 25, 2007,
Plaintiff filed, without leave of Court, Plaintiff's
Supplement To Her Opposition To Defendant's Motion For
Summary Judgment.  Defendant submits that Plaintiff has
offered no basis to proceed further and that summary
judgment in favor of Defendant is appropriate.

II.    ARGUMENT

To survive summary judgment, the nonmoving
party must offer more than mere allegations,
Anderson [v. Liberty Lobby, Inc., 477 U.S. 242,
249 (1986)], by going "beyond the pleadings and by
its own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on
file,' designate 'specific facts showing that
there is a genuine issue for trial.'" <u>Celotex</u>
<u>Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).

* * *

[L]egal conclusions "cloaked" as facts are not
sufficient to create a genuine issue of material
fact.

<u>United States</u> v. <u>BCCI Holdings</u>, 977 F. Supp. 1, 6 (D.D.C.
1997), <u>aff'd</u> <u>mem.</u>, 159 F.3d 637 (D.C. Cir. 1998).  Plaintiff
has conceded most of the specific facts proffered by
Defendant.  Where Plaintiff has challenged the proffered
facts, she has either not properly supported her challenge
or the matter is not material to the outcome of the motion.

Plaintiff's opposition states that the issue in this
case is whether David Geber discriminated against the
Plaintiff when he announced the position at issue as a GS-
512 series vacancy.  Plaintiff's Opp. at 24-26.[1]
Plaintiff's opposition, thus, makes much of the fact that
Mr. Geber classified Vacancy APB-03-138MM as a GS-512 series
position, rather than a GS-343 position.  <u>See</u> <u>id</u>. at 30-32.
As can be easily discerned from the Defendant's Statement Of
Material Facts and the supporting evidence, Defendant has

---

[1]  Plaintiff's initial recitation of her claim indicates
that Geber changed the occupational series "from 512 to
343".  Plaintiff's Opp. at 24.  She later correctly notes
that the change was "from 343 to 512."  <u>See</u> <u>id</u>. at 26.

-2-

fully documented why the decision was made to classify the
position as it was.  Set forth below are some of those facts
that, as stated by Defendant, were not disputed by
Plaintiff:

        2.   In February 2002, the Commissioner of the
        Internal Revenue Service initiated a freeze on all
        GS-343 occupational series vacancies.  See
        Plaintiff's Response To Request For Admission Nos.
        3-4; Robinson Depo. at 66-67 and Robinson Depo.
        Exhibit 10; Sprott Personal Depo. at 10-11 and
        Sprott Personal Depo. Exhibit 3.

        3.   The decision to impose the freeze on GS-
        343 positions was made without regard to race and
        was not made in attempt to discriminate against
        Plaintiff or members of her race.  See Plaintiff's
        Response To Request For Admission No. 4; Robinson
        Depo. at 66-67 and Robinson Depo. Exhibit 10.

        4.   The Appeals Division was given an
        Approved Staffing Plan which allowed for seventy-
        five (75) GS-343 analysts to remain in Appeals.
        See Babers Depo. 58-62, 66 and Babers Depo.
        Exhibit 7 (April 7, 2003 Memorandum For Acting
        Commissioner); Robinson Depo. at 67-70 and
        Robinson Depo. Exhibit 11.

        5.   The IRS offices needed to reclassify
        GS-343's into a more appropriate series in order
        to meet the Agency's approved staffing plan.  Id.;
        Geber Depo. at 29; Robinson Depo. at 67-70.[2]

--------------------------------------------------

[2]  Plaintiff has admitted the general understanding that
"the freeze was implemented because 343 series positions
were 'deemed to be too general'"  See Plaintiff's Statement
Of Material Facts In Dispute ("Plaintiff's Statement"), ¶ 5.
She goes on to address a separate issue, whether a person in
a 343 series position could gather a broad range of
experiences.  Id.  Whether or not the government's system
for choosing who is qualified for a given position is

-3-

6.    David Geber is now retired, but was formerly Director, Tax Policy and Procedure for Large and Mid-Sized businesses, at the Agency. (Geber Depo. at 23-24, 27-28, 37).

7.    In response to the freeze in 2002, David Geber was instructed to convert his eligible employees from GS-343 to GS-512 series.  (Geber Depo. 29-30, 50, 55-56).

* * *

9.  Mr. Geber requested the vacancy announcement that was given Vacancy Number APB-03-138MM; and Geber was the recommending official for the Senior Analyst Position at issue in this case.  Complaint, ¶¶ 1, 20, 24; Geber Depo. 82, 93. [3]

* * *

11.  In May 2003, Plaintiff applied for the position of Senior Program Analyst, Vacancy Number APB-03-138MM.  Complaint, ¶¶ 1, 17.

12.  Mr. Carson Sprott, a human resources specialist, deemed the Plaintiff not qualified for the position announced in Vacancy Number APB-03-138MM.  See Robinson Depo. at 62-63 and Robinson Depo. Exhibit 8 at 1-3; Sprott Personal Depo. at 37-38, 43, 45-46, 48-49, 80 and Sprott Personal Depo. Exhibit 14.

---

underinclusive, Plaintiff has admitted that the purpose of the decision to impose the freeze on GS-343 positions was made without regard to race and was not made in attempt to discriminate against Plaintiff or members of her race.  See Plaintiff's Response To Request For Admission No. 4; Plaintiff's Statement, ¶ 3.

[3]  Plaintiff admits the fact stated in paragraph 9, but asserts that Mr. Geber had an even greater role in the decision.  Plaintiff's Statement, ¶ 9.  The issue added by Plaintiff is not material.

13.  Carson Sprott assessed the Plaintiff's application and found that the Plaintiff was not qualified.  <u>See</u> Plaintiff's Response To Request For Admission Nos. 12-13; Robinson Depo. at 62-63 and Robinson Depo. Exhibit 8; Sprott Personal Depo. at 43.[4]

14.  Plaintiff had never held a GS-512 series position.  Complaint, ¶¶ 9-10; Plaintiff's Response To Request For Admission No. 17; Geber Depo. at 43-44.

15.  It was Mr. Sprott's understanding that the 512 series vacancy required specialized experience at the next lower grade, which the Plaintiff did not possess.  <u>See</u> Sprott Personal Depo. at 43-45, 64-68; Plaintiff's Response To Request For Admission Nos. 12-14; Robinson Depo. at 62-63, 111-12 and Robinson Depo. Exhibit 8).[5]

Statement Of Material Facts, ¶¶ 2-15.

Plaintiff's challenge to paragraph 10 of the Statement

Of Material Facts is unsupported.  The paragraph reads:

---

[4]  Plaintiff again admits the fact asserted, but posits another argument that is not material to the outcome. Plaintiff's Statement, ¶ 13.  Specifically, Plaintiff asserts that Mr. Sprott made a mistake in concluding that Plaintiff was not qualified for the position at issue.  <u>Id</u>. This assertion by Plaintiff merely highlights her misunderstanding of personnel principles and would not be relevant anyway, since she has admitted that "Mr. Sprott did not know the Plaintiff or the Plaintiff's race when he made the determination that Plaintiff was not qualified for the position announced in Vacancy Announcement APB-03-138MM." Plaintiff's Statement, ¶ 21.  <u>See also</u> Plaintiff's Statement, ¶¶ 15, 22 (Mr. Sprott understood a candidate had to have specialized experience equivalent at least to the next lower grade, which plaintiff's application did not support).

[5]  <u>See</u> Footnote 4, <u>supra</u>.

-5-

> 10. Mr. Geber's decision to advertise the vacancy
> announcement that was given Vacancy Number
> APB-03-138MM as a GS-512 occupational series
> position rather than a GS-343 occupational series
> position was based on the freeze implemented in
> filling GS-343 series positions; and the race of
> any applicant or potential applicant played no
> role in his decision. Geber Depo. at 44, 94;
> Robinson Depo. at 66-67, 103.

Statement Of Material Facts, ¶ 10. Rather than directing

the Court to admissible evidence, Plaintiff refers the Court

to Plaintiff's Opposition. Plaintiff's Statement, ¶ 10.

The arguments in the opposition do not, in fact, raise a

material dispute. Plaintiff's suggestion, for instance,

that Ms. Jones was assigned to a 343 series position during

the freeze is unsupported. See Plaintiff's Opp. at 12;

Plaintiff's Exhibits 8-9. The portions of the deposition

relied upon by Plaintiff, in fact, state that to Mr. Geber's

knowledge, Ms. Jones did not obtain a 343 position during

the freeze period. Geber Depo. (Plaintiff's Exhibit 1) at

43.

Plaintiff's own admission makes clear that the

imposition of the freeze was made without regard to race.

See Plaintiff's Response To Request For Admission No. 4 ("To

the extent she must respond: Plaintiff admits the Deputy

Commissioner's decision to 'impose[] a freeze on filing

[sic] all vacant analyst and related positions in the GS-343

and 301 occupational series' was made without regard to race. . .'"). <u>See</u> Plaintiff's Response To Request For Admission No. 4. Thus, Plaintiff's extended effort to show that the position advertised was similar to an earlier position performed by a person in the 343 series is misguided. Whether the change to a 512 position was logical or not, it was made to satisfy the directive from the Deputy Commissioner, whose directive was made free of any racial motive. <u>Id.</u>; Plaintiff's Statement, ¶ 3.

Plaintiff nevertheless attempts to argue, without foundation, that Mr. Geber's decision to advertise the vacancy at issue as a 512 position would have been different had Plaintiff been of a different race.[6] Her assertion is

---

[6] As suggested in support of Defendant's Motion, it is doubtful that Plaintiff has established a prima facie case. Nevertheless, the Court of Appeals has recently noted that what is a prima facie case is somewhat situation-specific. <u>See</u> <u>Czekalski</u> v. <u>Peters</u>, No. 05-5221, slip op. at 9-10 (D.C. Cir. Feb. 2, 2007). Rather than focus on this aspect, and because even plaintiff has admitted the existence of a legitimate non-discriminatory reason for the freeze, it makes better sense to proceed to assess the evidence, including that legitimate reason for posting the vacancy as a 512 position.

Plaintiff's argument, however, that she was the victim of discrimination when vacancy APB-03-138MM was announced as a GS-512 position is without merit. If the announcement itself was an adverse action, she has not alleged it. <u>See</u> Complaint, ¶¶ 1, 24 (alleging claim for denying plaintiff a promotion). Even if she were to amend the complaint to

without support.  Indeed, Appeals consistently made efforts
to satisfy the upper management directive that Appeals (like
other components of the IRS) limit the number of non-
professional series positions.  See Geber Depo. at 50-52,
68-69, 79.

    Plaintiff attempts to argue that Mr. Geber's
discriminatory animus should be inferred, because he did not
seek an exception to the freeze for the position at issue;
but he has testified to his understanding at the time that
exceptions would not easily be granted and he had no need
for an exception.  See Geber Depo. at 68-69 ("Q:  What did
you understand the process [for obtaining exceptions] to be?
A: You had to file a request for an exception, and lots of
luck.  Q: Did you ever have occasion to file a request for

---

assert a claim that the announcement itself was
discrimination, then she was untimely in seeking counseling
for the asserted violation.  See Complaint, ¶¶ 7, 17
(Vacancy Announcement in place by May 15, 2003, when
Plaintiff applied for the position and Plaintiff did not
seek counseling until July 10, 2003); see also Sprott
Personal Depo. at 10-13 and Exhibits 3-5 (The position was
announced and opened by May 5, 2003); 29 C.F.R. §
1614.105(a)(1) ("An aggrieved person must initiate contact
with a Counselor within 45 days of the date of the matter
alleged to be discriminatory or, in the case of personnel
action, within 45 days of the effective date of the
action."); Park v. Howard University, 71 F.3d 904, 907 (D.C.
Cir. 1995); Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985)
(untimely exhaustion of administrative remedies is a
defense).

an exception?  A: No.   Q:  Why not?  A: I had no need to.").
Plaintiff also argues that after the decision to announce
Vacancy APB-03-138MM as a GS-512 position, Mr. Geber managed
to secure permission to fill some other 343 positions in
Appeals around May 2003.  <u>See</u> Plaintiff's Opp. at 36.
Plaintiff argues that "Appeals requested to be excluded from
the freeze on May 23, 2003, within days of the vacancy
period for the selection at issue, and the request was
granted on June 9, 2003, prior to the selection at issue."
<u>Id</u>.  Plaintiff, however, ignores the fact that before
securing that permission, Appeals had documented that all of
the efforts to reduce the numbers of 343 positions in
Appeals had been successful in reducing the number of 343
positions to the limit imposed by management.  <u>See</u> Geber
Depo. at 75-80, and Geber Depo. Exhibits 10-11 (Plaintiff's
Exhibits 15-16).  Specifically, by April 7, 2003, Appeals
had taken steps to reduce its 343 and related non-
professional series positions, but was not yet there.  <u>See</u>
Plaintiff's Exhibit 15 (noting on April 7, 2003, that
"Appeals began the freeze with an on-rolls count of 112.

After actions processed last week, we will be down to 85, and we are getting closer to our target of 75.")[7]

Appeals' May 23, 2003 Memorandum seeking an exception noted:

> At the implementation of the Commissioner's hiring freeze for all analyst positions in the GS-343 and/or related occupations (i.e. 301), Appeals had an onboard count of 112 incumbents. Appeals has met its targeted occupancy rate of 75 or below by reducing the number of employees in these series positions.

> As a result, we are requesting that Appeals be granted an exclusion from the Commissioner's hiring freeze for analyst and related positions...

Geber Depo. at 79-80; Plaintiff's Exhibit 16.

Thus, Appeals had made great progress in limiting the number of its 343's, and announcing Vacancy APB-03-138MM as a GS-512 position contributed to being able to advise upper management that Appeals was on target. See id.; Geber Depo. at 80 ("It appears that appeals did meet its target.")

Plaintiff argues that the agency showed pretext when it failed to go back and re-advertise Vacancy APB-03-138MM as a

---

[7] The April 7, 2003 memorandum noted that to meet the goal would require Appeals to follow through on plans that remained in the works. See Plaintiff's Exhibit 15 ("Actions taken to date include: returned employees on detail in the 343 series to their home positions, . . . initiated paperwork to move 27 employees out of the series. . . These actions . . . will bring us under the new APS of 75 and accommodate the exceptions requested in this memo.")

343 when it learned in June that having met its goals, it was free of the earlier freeze restrictions.  Plaintiff's Opp. at 36.  But, she has simply failed to offer evidence that this failure to re-advertise a position that was underway was motivated by race.  The request to advertise the position was forwarded to personnel by the end of April 2003, the position opened May 5, 2003 and closed May 19, 2003.  See Sprott Personal Depo. at 10-13 and Exhibits 3-5.  No purpose would have been served by re-advertising the position at the 343 series in June, except to increase the number of 343's in Appeals.  And such a goal was clearly contrary to the desire of management.  See Plaintiff's Response To Request For Admission No. 4; Geber Depo. at 92-94.

What remains clear is that there was an Agency-wide movement to reclassify existing GS-343 positions into more descriptive professional series, such as 512 and 930 series positions in the office of Appeals.  Plaintiff's opposition alleges that Mr. Geber announced Vacancy APB-03-138MM as a GS-512 position, while he had converted his remaining employees to the 930 series.  See Plaintiff's Opp. at 37.  Whether Mr. Geber converted his employees to the 512 or 930 series is immaterial.  The fact remains, Mr. Geber was

-11-

directed to, and did, convert his employees out of the 343 series and into more descriptive series such as 512 and 930.

Plaintiff suggests that she could have applied for the position if it had been advertised as a 930 Series.  <u>See</u> Plaintiff's Opp. at 37 and n.41.  Plaintiff is seeking a promotion from the GS-14 level.  <u>See</u> Complaint at 1-2.  She is wrong to suggest that her prior experience as a 930 would qualify her for a 930 series position at a GS-14 grade.  The problem was that Plaintiff did not have a year in grade at the GS-13 level in either the 512 or the 930 series.  <u>See</u> Sprott Personal Depo. at 74 and Plaintiff's Qualifications Record (excerpt from Sprott Personal Depo. Exhibit 5) (copy attached) (showing Plaintiff's only experience in a 930 series position was as a "GS-930-12").  Because Plaintiff would not have qualified for a 930 series position at the GS-14 level, it makes no sense for her to argue that the agency discriminated against her by not advertising the position at issue as some other position for which she also was not qualified.

Plaintiff's Supplemental filing fails otherwise to produce evidence of pretext.  Plaintiff appears to claim that because the other employees in Appeals whom Mr. Geber redesignated were redesignated to the 512 series and then to

-12-

the 930 series after the announcement at issue, this somehow shows pretext. In fact, what was significant was that the 343 series positions were being, where possible, redesignated to series other than 343 and 301 to reach a goal of 75 in appeals, as directed by the Deputy Commissioner. Mr. Geber, who retired from the agency before his deposition, was not able to recall for sure whether all of the changes to the 512 and 930 positions occurred before or just around the time of the announcement at issue. Mr. Geber testified:

> Q: During your tenure as a manager in appeals, you inquired on behalf of your subordinates as to eligibility of employees for conversions from series 343 to 512 positions; isn't that correct?
>
> A: I checked with human resources to see what the requirements were for the 512 series, and then when I had that information, I spoke to each of my 343's and said, are you qualified, do you qualify? If so, do you have any objection to being converted since the commissioner wants to reduce the number of 343's?
>
> Q: And when did you do this?
>
> A: It would have been prior to – either prior to the announcement of this position or concurrent with – probably prior to – in fact, I would be <u>almost</u> positive it was prior to. That is why I would have announced this as a 512.

Geber Depo. at 44 (emphasis added). Plaintiff has submitted with her Supplemental Submission declarations that verify

that these changes were, in fact, made to other employees'
positions, consistent with Mr. Geber's recollection,
although, as he said in his deposition, they may have been
accomplished shortly after the May 5, 2003 Vacancy
Announcement at issue.  <u>See</u> Geber Depo. at 44, 50-51 ("Q:
Who had you converted from 343 to a 512?  A:  Gene Perdue,
Sandy Cohen, Michelle Topel, possibly, I am not positive,
Jacqueline Harris."); Plaintiff's Exhibit 31, ¶¶ 5-7
(verifying that Cohen was approached in Spring 2003 about
changing his series and that he was changed first to a 512,
then to a 930 after he noted that "the 930 series was the
most rational"); Plaintiff's Exhibit 32, ¶ 4 (same regarding
Perdue).

Likewise, whether Mr. Geber announced the position at
issue as a 512 or a 930 series position is immaterial.  The
Plaintiff admits that her only experience at the GS-13 level
was in the 343 series.  (Robinson Depo. 26-27).  In order to
qualify for higher graded positions, one must have
experience in the next lower grade.  (<u>See</u> Sprott Personal
Depo. at 37; Plaintiff's Statement, ¶ 15).  Since the
Plaintiff did not have experience at the GS-13 level in
either the 930 or the 512 series, <u>see</u> Plaintiff's Statement,

¶ 22, Plaintiff was not qualified to apply for a promotion to the GS-14 level in either of those specialized series.

Plaintiff's opposition also alleges discrimination because Mr. Geber did not seek an exception to the freeze, or wait until after the freeze to announce Vacancy APB-03-138MM in the GS-343 series.  <u>See</u> Plaintiff's Opp. at 12. Mr. Geber had no need to seek an exception to the freeze. The Agency was purposefully moving away from generalized 343 series positions and toward more specific, professional series positions.  <u>See</u> Geber Depo. at 63; Plaintiff's Statement, ¶ 3.  Mr. Geber was already converting his eligible employees out of the 343 series.  <u>Id</u>. at 44.  His alleged "failure" to go against the Agency-wide movement and to seek an exception to the freeze is not evidence of discrimination.  Rather, it is evidence that he was following Agency directives and working to reduce the number of 343 series positions in his division.  See Geber Depo. at 69 ("I wanted to comply with the directive to reduce the 343's").  To have Mr. Geber convert his current employees out of the 343 series, only to announce a new opening in the 343 series without a reason, would be contradictory to the mission of the Agency at that time.

-15-

Plaintiff's opposition further alleges that throughout the selection process, Mr. Geber was confronted with a choice between two candidates. <u>See</u> Plaintiff's Opp. at 30. This allegation is unfounded. Mr. Geber requested that the vacancy be announced nation-wide and include posts of duty in Washington, DC, St. Louis, or Los Angeles. Geber Depo. at 53 and Geber Depo. Exhibit 6 at 2. Mr. Geber had no way of knowing who would even apply for the position, let alone their race. <u>See</u> Geber Depo. at 94. Mr. Geber only became involved in the selection process after the vacancy closed and a list of qualified applicants was forwarded by Carson Sprott. <u>See</u> Geber Depo. at 57. It was then that Mr. Geber learned that Sheila Jones was the only qualified applicant. <u>Id</u>.; <u>see</u> Plaintiff's Statement, ¶ 29 ("Undisputed" that "Sheila Jones had over ten years of experience as a GS-512-13 when she was selected for vacancy APB-03-138MM."). As such, Mr. Geber was not choosing between an African-American and a Caucasian applicant. Mr. Geber was recommending the only qualified applicant from the list supplied by Carson Sprott. Since Carson Sprott did not know the applicants' race, the list which Mr. Geber received could not have been constructed through discriminatory

-16-

means.  See Sprott Personal Depo. at 14, 61, 63; Plaintiff's Statement, ¶ 21.

Plaintiff's opposition also theorizes a conspiracy between Carson Sprott and Mr. Geber.  See Plaintiff's Opp. at 24, 33.  Both Mr. Sprott and Mr. Geber have stated that they did not have contact about the choice to advertise the position as a series 512 position.  See Sprott Personal Depo. at 61-62; Geber Depo. at 46.  Plaintiff alleges error on Mr. Sprott's part because he did not contact the Plaintiff to better decipher her qualifications.  See Plaintiff's Opp. at 11.  It is undisputed, however, that Mr. Sprott did not know Plaintiff's race at the time he acted. See Sprott Personal Depo. at 1, 14, 61-63; Plaintiff's Statement, ¶ 21.

In light of the legitimate, non-discriminatory reason for advertising the position as a 512 series position at the grade 14 level, and given Plaintiff's lack of qualifications for such a position (and similar lack of qualifications for a 930, grade 14 position), she cannot establish that the decision made "gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).

III.   <u>CONCLUSION</u>

Plaintiff's remaining claims regarding the agency's asserted discriminatory actions are either unsupported or rely on fanciful leaps of faith far beyond logical inferences that a reasonable juror might make based on the evidence.  For these reasons and those previously set forth in support of Defendant's Motion For Summary Judgment, judgment should be entered in favor of Defendant in this action.  Accordingly, the Defendant respectfully requests that the Court grant Defendant's Motion for Summary Judgment and dismiss this case with prejudice.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney