# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

PAMULA ROBINSON     )
            )
    Plaintiff,    )
            )
  v.        )  Civil Action No. 05-1212 (RBW)
            )
HENRY PAULSON,     )
SECRETARY OF THE TREASURY, )
            )
    Defendant,   )
_____)

## MEMORANDUM OPINION

The plaintiff, Pamula Robinson, brings this action against the defendant, Henry Paulson in his official capacity as Secretary of the Treasury,[1] pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1 through e-17 (2000), alleging that she was unlawfully discriminated against based on her race (African American) when she was denied a promotion to the GS-512-14 Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM. Complaint ("Compl.") ¶¶ 1, 24. Currently before this Court is the defendant's Motion for Summary Judgment.[2]

_____

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted Henry Paulson, current Secretary of the Treasury, for the former Secretary, John Snow, as the defendant in this action.

[2] The following papers have also been submitted in connection with this motion: (1) Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), (2) Plaintiff's Opposition to Defendant's Motion for Summary Judgment and her Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), and (3) Defendant's Reply To Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply"). The plaintiff has filed a Motion to Strike Portions of Defendant's Motion for Summary Judgment Reply ("Pl.'s Mot. to Strike"), requesting that this Court strike the defendant's assertion in his reply that the "[p]laintiff failed to proffer a 'statement in response to . . . [the] [d]efendant's Statement of Material Facts Not In

(continued . . . )

For the reasons outlined below, the defendant's motion for summary judgment will be granted.

## I. BACKGROUND

The facts when viewed in the light most favorable to the plaintiff, are as follows. The plaintiff, an African-American, has been employed by the Internal Revenue Service ("IRS") for approximately thirty years, including serving as a GS-343-13 Program Analyst for approximately fifteen years in the Tax Policy and Procedures Division of the Office of Appeals ("Appeals Division") of the IRS.[3]  Compl. ¶¶ 2, 9-10.  The plaintiff has received many performance awards and letters of commendation, including a Deputy Commissioner's Award.  Id. ¶14; Plaintiff's Opposition to Defendant's Motion for Summary Judgment and her Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ('Pl.'s Opp'n') at 8-9.  In addition to her experience as a Program Analyst, the plaintiff also served as the Technical Analyst Program Coordinator between 1994 and 1998, while in a GS-343-13 position.  Id. at 4, 9.  Her job performance during this period was rated as either "outstanding" or "exceeds

---

Genuine Dispute.'"  Pl.'s Mot. to Strike at 1-2.  Because the defendant concedes in its Response to Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment ("Def.'s Response") that it was mistaken about the plaintiff not filing a response to its Statement of Material Facts Not in Genuine Dispute, Def.'s Response at 2, the plaintiff's motion will be granted.

[3] "Program Analysts at IRS Headquarters maintain portions of the IRS Manual and monitor the policies and procedures used by IRS staff in the Field Offices."  Pl.'s Opp'n at 2 (citing Exhibit ("Ex.") 1 (Deposition of David Geber) ("Geber Dep.") at 26, 28, 62).  "When an individual challenges a tax levied against [that person], that appeal is processed by the IRS Appeals Division, which is further divided according to the types of taxes being reviewed (e.g., Large Case for corporations)."  Id. at 2 n.1 (citing Ex. 1 (Gerber Dep.) at 24; Ex. 3 (First Deposition of Carson Sprott) ("Carson Dep.") at 28).  "Appeal [Division] employees are assigned to one of three series[:] . . . [(1)] [t]he 343 series[,] which represents Program Analysts, who monitor the Agency's policies and procedures[;] [(2)] [t]he 930 series[, which] represents Appeals Officers[] who negotiate and settle tax appeals, . . . [and (3)] [t]he 512 series[, which] represents Internal Revenue Agents[] who are essentially professional accountants."  Id.

fully successful" in each area of responsibility critical to the performance of her duties. Id. at 9.  The Technical Analyst Program Coordinator coordinates national training (Continuing Professional Education ("CPE")) programs for over 200 Technical Analysts, regularly answers questions from staff in the field, participates in several business and program reviews of the Technical Section, and updates the Technical Analysts Handbook and Technical Advise Request Forms.  Id. at 5 & n.6, 9.  The plaintiff also provided assistance to the Technical Section Chiefs in the field, identifying areas that could be improved and sharing procedures with them that were used in other offices.  Id.  at 9.  In 1998, due to a staffing realignment, James Skunda became the Technical Analyst Program Coordinator as a GS-343-14 level employee.  Id. at 4.  "After Skunda took an extended leave, Sheila Jones assumed the Coordinator duties on October 31, 2002, during a one year temporary assignment as a GS-343-14 [level employee]."[4]  Id. at 4-5.

On February 27, 2002, the Deputy Commissioner of the IRS, Bob Wenzel, imposed "a temporary freeze on [establishing] any new positions or back filling any vacant position in the GS-343 and/or occupational series at all grade levels." Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), Ex. 5 (Deposition of Pamula Robinson) ("Robinson Dep.") at 66-67 & Attachment ("Attach.") 10 (Memorandum from Bob Wenzel, Deputy Commissioner of Internal Revenue, to Division Commissioners Chiefs, dated February 27, 2002) ("Wenzel Memorandum") at 1; see also Def.'s Mem. at 2 (citing Ex. 4 (Plaintiff's Response to Defendant's First Set of Discovery Requests ("Pl.'s Disc. Resp.") Nos. 3-4).  It is undisputed that "the Deputy Commissioner's decision to 'impose[] a

---

[4] There is no evidence in the record that the plaintiff applied for the temporary detail to this position.

freeze on [filling] all vacant analyst and related positions in the GS-343 and 301 occupational series' was made without regard to race . . . ." Def.'s Mem. at 2. After the hiring freeze was implemented, the Appeals Division was given an Approved Staffing Plan, which allowed for seventy-five GS-343 analysts to remain in the Division. Id.

David Geber, who is now retired and was the Director for Tax Policy and Procedure for Large and Mid-Sized Businesses at the IRS during the period in question, Defendant's Reply To Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply") at 4, testified that he was instructed in 2002 in response to the freeze, to convert the employees under his supervision from the GS-343 to the GS-512 series,[5] Def.'s Mem. at 2. "On May 5, 2003, at Mr. Geber's request, Vacancy Announcement APB-03-138MM was issued for an Internal Revenue Agent (Senior Program Analyst) position at the GS-0512-14 level to permanently fill the vacancy" resulting from Mr. Skunda's extended absence. Compl., ¶¶ 20, 22; Def.'s Mem. at 3. Mr. Geber contends that he "requested that the vacancy be announced in the 512 series due to the freeze on 343 positions and in order to maintain consistency, since all eligible 343 employees in his section had already been converted to 512 positions." Def.'s Mem. at 3. The plaintiff, however, disputes that the freeze was the reason Mr. Geber reclassified the GS-14 Senior Program Analyst position at issue from the 343 series to the

---

[5] The plaintiff disputes that Mr. Gerber was instructed to convert his eligible employees from GS-343 to GS-512 positions. Pl.'s Opp'n at 13. Although "[Mr.] Geber claims Robi[n]son directed him to convert all eligible . . . employees from the 343 to 512 series in response to the freeze," the plaintiff asserts that Mr. Gerber's first-level supervisor, Beverly O. Babers, did not discuss any such conversions with Geber, was not involved in any conversions on the subject with anyone else, and documents produced by the defendant through discovery do not support the defendant's assertions that any such conversions occurred. Id. at 12-13. This evidence, which appears to be uncontroverted, purports to show that at least three employees that would have had their positions converted, have not been converted. Id. (indicating that Mr. Perdue and Ms. Harris are currently assigned to the 930 series, while Ms. Cohen occupies a 343 series position).

512 series.[6]  See Pl.'s Opp'n at 11-14, 36-37.  The plaintiff asserts that Mr. Geber testified that he knew it was possible to obtain an exception to the mandated freeze, and he did not testify that anything prevented him from requesting an exception so that the Senior Program Analyst position could remain in the 343 series.  Id. at 12 & Ex. 1 (Deposition of David Gerber) at 70-71.  Further, the plaintiff contends that Mr. Geber knew that all he needed to do to obtain an exemption was to submit a memorandum.  Id. Notwithstanding the parties' dispute as to whether the reclassification was obligatory, "the requirements for the 512 vacancy were defined by the Qualification Standards Handbook, which is published by the Office of Personnel Management ("OPM")" and appropriate for that position.  Def.'s Mem. at 3.  The vacancy was open to IRS employees nation-wide and the announcement for the position noted that the duty station for the position could be in either Washington, D.C., St. Louis, Missouri, or Los Angeles, California.  Def.'s Mem. at 3.

On May 14, 2003, Sheila Jones applied for the position.  Id.  Carson Sprott, a human resources specialist, "assessed Ms. Jones' application and based on her more than ten years of experience in a GS-512-13 position, he found her to be qualified" for the position.  Def.'s Mem. at 5.  On May 15, 2003, the plaintiff also applied for the position. Compl. ¶ 17; Def.'s Mem. at 4.  Mr. Sprott also assessed the plaintiff's application and found her unqualified for the position.  Def.'s Mem. at 4.  In making this assessment, "[i]t

---

[6] The plaintiff argues that Mr. Geber's discriminatory animus should be inferred from his failure to seek an exception to the freeze for the position at issue, despite Mr. Gerber's testimony that it was his understanding that exceptions were difficult to obtain and because there was no need for an exception in any event.  See Pl.'s Opp'n, Ex. 1 (Geber Dep.) at 68-69 ("Q:  What did you understand the process [for obtaining exceptions] to be?  A:  You had to file a request for an exception, and lots of luck.  Q:  Did you ever have occasion to file a request for an exception?  A: No.  Q:  Why not?  A:  I had no need to.").

was Mr. Sprott's understanding that the 512 series vacancy required specialized experience at the next lower grade, which the plaintiff did not possess." Id. Thus, upon comparing the plaintiff's application with the criteria for the position set forth in the Qualification Standards Handbook, Mr. Sprott determined that the plaintiff did not satisfy the minimal qualifications for the position.[7] Id. Mr. Geber therefore recommended Ms. Jones for the position and Beverly Ortega Babers then selected Ms. Jones to fill the vacancy. Id. at 5. The plaintiff acknowledges that she has no facts upon which to base her conclusion that Ms. Ortega Babers discriminated against her in making the selection decision. Id.

On June 20, 2005, the plaintiff filed this lawsuit alleging that the defendant unlawfully discriminated against her on the basis of her race (African American) when she was not promoted to the GS-512-14 Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM. Compl. ¶¶ 1, 24. The defendant filed its motion for summary judgment on November 15, 2006, arguing that "the [p]laintiff's non-selection was based not on race but on a legitimate, non-discriminatory reason – specifically that the [p]laintiff was not deemed minimally qualified for the position she sought and was therefore removed from consideration by the Personnel Specialist at a time when he did not even know her race." Def.'s Mem. at 1. The defendant further

---

[7] The plaintiff does not dispute that Mr. Sprott did not know the plaintiff or her race when he made his qualification determination. Plaintiff's Statements of Material Facts in Dispute ¶ 21. However, she disputes that this information relieves the defendant of liability under the "cat's paw" doctrine, id., Pl.'s Opp'n at 25-26, 34-35, a doctrine "[i]n the employment discrimination context . . . [which] refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action," EEOC v. BCI Coca-Cola Bottling Co., et al., 450 F.3d 476, 484 (10th Cir. 2006). Further, it is undisputed that the plaintiff had never held a GS-512 series position when she applied for Vacancy Announcement APB-03-138MM. Compl. ¶¶ 9-10; Def.'s Mem. at 4.

asserts that the plaintiff cannot "present any evidence that this reason is a pretext for discrimination." Id. In opposition, the plaintiff responds that "[d]espite her many years of service and extensive background, the IRS discriminated against [her] when IRS manager Geber (white) manipulated the selection process for the GS-14 Senior Program Analyst position responsible for the Technical Analyst Program advertised in Vacancy Announcement APB-03-138MM . . . to prevent [the plaintiff] from being selected for the job." Pl.'s Opp'n at 1. Specifically, the plaintiff contends that "[Mr.] Geber manufactured a pretextual reason for not selecting [her] by intentionally re-classifying the [Senior Program Analyst] position, which was previously and subsequently occupied by 343 series employees, as a 512 series position to prevent [her] from being considered for the position and to assure that [Ms.] Jones, a white candidate, would be selected instead." Id. at 1-2.

## II.  STANDARD OF REVIEW

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure 56 if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials,"

Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted), and "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted).  Simply put, "conclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted).  Rather, to withstand a properly supported motion for summary judgment, the non-moving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "[T]here is no [genuine] issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U .S. at 249 (citation omitted), and if the Court concludes that the evidence adduced by the non-moving party "is merely colorable ... or is not significantly probative," id., (citations omitted), or if the non-moving party has otherwise "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), then the moving party is entitled to summary judgment.  Finally, all "supporting and opposing affidavit[s] [submitted in connection with a Rule 56(c) motion] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated."  Fed. R. Civ. P. 56(e).

### III.  LEGAL ANALYSIS

Title VII provides, in relevant part, that all "personnel actions affecting

employees or applicants for employment . . . in executive agencies . . . shall be made free

from any discrimination based on race."  42 U.S.C. § 2000e-16(a).  In evaluating claims

of racial discrimination in employment under Title VII, it is useful to remember the

District of Columbia Circuit's repeated admonition that the statute does not, and was not

intended to, transform the Court into "a super-personnel department that reexamines an

entity's business decisions."  Holcomb, 433 F.3d at 897 (internal quotation marks and

citations omitted).  Indeed, even in situations where qualified candidates were under

consideration for a position, the District of Columbia Circuit has cautioned that "Title VII

liability cannot rest solely upon a judge's determination that an employer [has] misjudged

the relative qualifications of admittedly qualified candidates."  Fischbach v. District of

Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation omitted).

Thus, "[s]hort of finding that the employer's stated reason [for its selection decision] was

[merely] a pretext [for unlawful discrimination,] . . . the [C]ourt must respect the

employer's unfettered discretion to choose among qualified candidates."  Id., (citations

omitted).  In assessing this question, "the ultimate burden of persuading the trier of fact

that the [employer] intentionally discriminated against the plaintiff remains at all times

with the plaintiff."  Reeves, 530 U.S. at 142 (internal quotation marks and citation

omitted).

Where, as here, the plaintiff has not proffered any direct evidence of intentional

discrimination, her race discrimination claims under Title VII are evaluated under the

burden-shifting framework first articulated in McDonnell Douglas Corp. v. Green, 411

U.S. 792, 803 (1973).[8]  Weber v. Battista, 494 F.3d 179, 182 (D. C. Cir. 2007).  Under

this framework, the plaintiff bears the initial burden of "establish[ing] a prima facie case

of discrimination by a preponderance of the evidence."  Id. (internal quotation marks and

citation omitted).  To do so in the context of an adverse selection decision case, the

plaintiff must demonstrate that "(1)[s]he is a member of a protected class; (2) [s]he

applied for and was qualified for an available position; (3) despite [her] qualifications[,]

[s]he was rejected; and (4) either someone filled the position[,] or the position remained

vacant and the employer continued to seek applicants."  Jackson v. Gonzales, 496 F.3d

703, 707 (D.C. Cir. 2007) (internal quotation marks, citation, and ellipsis omitted); see

also Holcomb, 433 F.3d at 895 (same). If the plaintiff succeeds in establishing a prima

facie case in this manner, "the burden shifts to the defendant employer to produce

evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate,

nondiscriminatory reason."  Jackson, 496 F.3d at 707 (quoting Reeves, 530 U.S. at 142)

(internal quotation marks omitted).  If the employer presents such an explanation, "to

survive summary judgment the plaintiff must show that a reasonable jury could conclude

from all of the evidence that the adverse employment decision was made for a

discriminatory reason."  Holcomb, 433 F.3d at 896-97 (internal quotation marks and

citation omitted); see Weber, 494 F.3d at 182 (stating that "the plaintiff must [ultimately]

---

[8] "Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the
particular fact in question without any need for inference. Such evidence includes any statement
or written document showing a discriminatory motive on its face." Lemmons v. Georgetown
Univ. Hosp, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (Walton, J.) (internal quotation marks,
citations, and ellipsis omitted) (emphasis in original).  The plaintiff does not argue, nor could she,
that the factual record in this case contains any such direct evidence of discrimination.

demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory") (internal quotation marks and citation omitted).

Here, the plaintiff being an African-American, it is undisputed that she is a member of a protected class.  Compl. ¶1; Def.'s Mem. at 11.  And while the plaintiff applied for the Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM, and the position was filled by someone else, the parties dispute whether the plaintiff was qualified for the position.  Specifically, the defendant contends that "while the [p]laintiff did apply for the Senior Program Analyst position, she was not minimally qualified for the position."  Def.'s Mem. at 11.  On this score, the defendant has provided evidence that Mr. Sprott, a human resources specialist, determined that the plaintiff was not qualified for the position based on standards set forth in the Qualification Standards Handbook.  Id. at 11.  And the defendant posits that Mr. Sprott's decision did not factor in the plaintiff's race, because he had no knowledge of it, id.; rather, as the plaintiff acknowledges, Mr. Sprott concluded that based on the Qualifications Standards Handbook, the plaintiff was unqualified because she "lacked one year of prior experience in the 512 series," while the other candidate was qualified because she had such experience, Pl.'s Opp'n at 21.  The plaintiff contends, however, that had "the [Senior Program Analyst] position . . . remained classified as a 343 series position [as it was classified in the past], [she] would have been deemed qualified," id. at 22, and "[Mr.] Geber's act of intentionally mis-classifying the position's series lead directly to [her] not being considered for the vacancy and assured that [Ms.] Jones, the white applicant and indeed the only remaining candidate, would be selected instead."  Id. at 24.  Further, the plaintiff asserts that "[she] served as the Technical Analyst Program

Coordinator for four years and but for [Mr.] Geber's actions, she would have been considered and selected for the vacancy now at issue. . . ." Id. Therefore, the plaintiff asserts that "because [Mr.] Geber's act of mis-classifying the position's series prevented [her] from being considered for the vacancy . . . [,]" id. at 26, "the Court must consider whether [she] would have qualified for the position but for [Mr.] Geber's discriminatory conduct," id. And the plaintiff touts her extensive experience with the IRS and her four year tenure as the Technical Analyst Program Coordinator as proof that she was qualified for the promotion. Id. at 28-30.

The Court agrees with the plaintiff's position that she has established, for the purpose of the McDonnell Douglas analysis, that she was qualified for the position. Having asserted the reclassification of the position by the defendant to the GS-512 series as the discriminatory act which resulted in her non-selection, the plaintiff's failure to previously occupy a position in that series cannot act as a bar to her ability to establish her prima facie case of unlawful discrimination. See McDonnell Douglas, 411 U.S. at 802 & n.14 ("Where employers have instituted employment tests and qualifications with an exclusionary effect on minority applicants, such requirements must be 'shown to bear a demonstrable relationship to successful performance of the jobs' for which they were used[.]") (citing, among others, Griggs v. Duke Power Co., 401 U.S. 424 (1971), for the proposition that employment practices that operate in a discriminatory manner and do not relate to successful job performance are prohibited). The plaintiff having satisfied the final element of a prima facie case of employment discrimination under Title VII – she was not selected for the position for which she applied and someone else was selected for it - the burden must shifts to the defendant to show that the reason the plaintiff was not

selected for the position was "for a legitimate, nondiscriminatory reason." Jackson, 496 F.3d at 707 (quoting Reeves, 530 U.S. at 142).  Moreover, "[w]here the defendant's proffered evidence for showing that a plaintiff [did not meet] the employer's expectations mirrors the nondiscriminatory reason produced by the employer, courts have assumed a prima facie case and proceeded to the pretext inquiry in the interests of fairness and efficiency."  Jones v. Giant Foods, Inc., Civ. No. 00-3469, 2000 WL 1835393, *2 (D.Md. 2000); see also Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1505 (5th Cir. 1988) ("Placing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy"); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 245 (4th Cir. 1982) (noting that the prima facie case and pretext analyses are "of a piece with and inseparable" where the reason offered for both is identical).

The Court finds that the defendant has met its burden of articulating a legitimate, non-discriminatory reason for the plaintiff's non-selection.  It is undisputed that on February 27, 2002, the Deputy Commissioner of the IRS, Bob Wenzel, imposed a temporary freeze on the establishment of any new positions and filling any vacant position in the GS-343 and occupational series at all grade levels.  Def.'s Mem. at 2.  It is also undisputed that "the Deputy Commissioner's decision to 'impose[] a freeze on filling all vacant analyst and related positions in the GS-343 and 301 occupational series' was made without regard to race . . . ."  Id.  The defendant further maintains that Mr. Geber requested that the Senior Program Analyst position be announced in the 512 series due to the freeze on the 343 series positions and in order to maintain consistency, since all eligible 343 employees in his section had already been converted to 512 series positions.

Def.'s Mem. at 3.  Therefore, the defendant has articulated a legitimate, nondiscriminatory reason for the plaintiff's non-selection – that the hiring freeze in place prevented him from hiring for another 343 series position, which rendered the plaintiff ineligible for selection for the position at issue, Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) ("[O]nce a defendant has proffered such a nondiscriminatory explanation, it has 'done everything that would be required of [it] if the plaintiff had properly made out a prima facie case.'") (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983), and accordingly the only question remaining is "'whether the defendant intentionally discriminated against the plaintiff,'" id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)); see Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 653-54 (D.C. Cir. 2003); Waterhouse v. District of Columbia, 298 F.3d 989, 993 n. 6 (D.C. Cir. 2002).

As noted already, the defendant alleges that Mr. Geber requested that the Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM be announced in the 512 series due to the freeze on the 343 series positions and in order to maintain consistency, since all eligible 343 employees in his section had already been converted to 512 series positions.  Def.'s Mem. at 3.  Therefore, the defendant contends that the series change of the Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM to a 512 series position was made to satisfy the directive from the Deputy Commissioner.  Def.'s Reply at 6.  Thus, the requirements of the newly reclassified position resulted in Ms. Jones being selected because she had more than ten years experience in a GS-512-13 position.  Def.'s Mem. at 11.  Accordingly, this

Court will proceed to assess whether the evidence shows that the defendant intentionally discriminated against the plaintiff.

In assessing whether unlawful discrimination was the actual reason underlying the defendant's decision, the Court must consider, "in its full context," all of the evidence in the record. Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). This includes "(1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." Holcomb, 433 F.3d at 897 (citation omitted). If the plaintiff is ultimately "unable to adduce evidence that could allow a reasonable trier of fact to conclude that [the defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [the plaintiff]." Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997) (citation omitted).

The District of Columbia Circuit has held that "[i]n order to justify an inference of discrimination, the qualifications gap [between the selectee and the plaintiff] must be great enough to be inherently indicative of discrimination." Holcomb, 433 F.3d at 897 (citations omitted). To make this showing, a plaintiff cannot simply "compar[e] [her] qualifications against those of the successful applicant," but must "expose other flaws in the employer's explanation, including ... showing [that] the employer has misstated [her] qualifications." Id. at 897 (citation omitted); see Jackson, 496 F.3d at 707 (stating that "a plaintiff may present evidence to show that the employer's qualifications-based explanation is incorrect or fabricated") (internal quotation marks and citations omitted).

Otherwise, the Court may assume that "[w]hen an employer says it made a hiring decision based on the relative qualifications of the candidates, . . . a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of qualifications alone." <u>Jackson</u>, 496 F.3d at 707 (internal quotation marks and citation omitted).  Rather, "[i]n a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." <u>Holcomb</u>, 433 F.3d at 897 (internal quotation marks and citation omitted).  On the other hand, if a factfinder could conclude, based on the evidence presented, "that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less qualified candidate, something that employers do not usually do," absent "some other strong consideration, such as discrimination." <u>Jackson</u>, 496 F.3d at 707  (internal quotation marks and citation omitted) (emphasis added); <u>see also</u> <u>Holcomb</u>, 433 F.3d at 897 (stating that "a factfinder could infer discrimination if the evidence showed a reasonable employer would have found the plaintiff significantly better qualified for the job but nevertheless failed to offer the position to [him]") (citation omitted).

The District of Columbia Circuit has therefore instructed that "[o]nce [an] employer has articulated a non-discriminatory explanation for its action[,] the issue is not the correctness or desirability of [that explanation] but whether the employer honestly believes in the reasons it offers." <u>George v. Leavitt</u>, 407 F.3d 405, 415 (D.C. Cir. 2005) (internal quotation marks, citation, and ellipsis omitted).  The plaintiff may attempt to

demonstrate the pretextual nature of the employer's stated motive "either directly by persuading the [factfinder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 413 (internal quotation marks and citation omitted). Here, the plaintiff predominantly adopts the latter tactic, arguing that the defendant's stated explanation for her nonselection–the purportedly superior qualifications of Ms. Jones for the Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM–is not credible because "[Mr.] Geber's act of intentionally mis-classifying the position's series lead directly to [the plaintiff] not being considered for the vacancy and assured that [Ms.] Jones, the white applicant and indeed the only remaining candidate, would be selected instead." Pl.'s Opp'n at 24.

The plaintiff offers several reasons for her assertion that Mr. Gerber changed the series of the position to eliminate her as a candidate. Id. at 30. First, she asserts that Mr. Geber knew her and knew that she was an African American. Id. at 31. He also was allegedly aware that "[she] had experience coordinating the Technical Analyst Program; that she wanted a promotion to GS-14 and was applying for GS-14 positions; and that she had never held a 512 series position." Id. On the other hand, she contends that "he knew that [Ms.] Jones had served for a short time as the Technical Analyst Program Coordinator; that she too would apply for the position when it was announced; and that she had previously worked in a 512 series position (unlike [the plaintiff])." Id. In addition, she contends that "[Mr.] Geber knew that employees with experience in the 343 series would not be considered for the newly minted 512 series position that he orchestrated." Id. The Court concludes, however, that when considering all of the

admissible evidence the plaintiff would be able to present at trial, a jury could not find that Mr. Gerber acted with a discriminatory motive in not selecting the plaintiff for the position for the following reasons.

First, the plaintiff's principal argument rests on her own opinions for which there is no factual support in the record. As previously noted, it is undisputed that there was an agency-wide decision to reclassify existing GS-343 positions into more descriptive professional series, such as 512 and 930 series positions. Pl.'s Opp'n at 14; Def.'s Mem. at 2. The defendant has provided evidence that the Appeals Division was given an Approved Staffing Plan, which allowed for seventy-five GS-343 analysts to remain in that Division. Def.'s Mem. at 2. The defendant has also provided evidence showing that as a result of the Approved Staffing Plan, the Appeals Division employed measures and documented its efforts to reduce its number of 343 series positions. Id., Ex. 2 (Ortega Babers Dep.) at Attach. 7 (Memorandum from David Robinson, Chief of Appeals, to the Acting Commissioner, dated April 7, 2003) (indicating that the Appeals Division had 112 employees on its rolls classified at the 343 series when the freeze was implemented, but after implementing several personnel actions, including, but not limited to, initiating paperwork to move 27 employees out of the 343 series and returned employees on detail to 343 series positions to their regular positions, the Appeals Division expected to reduce the number of its 343 series employees to 85); Ex. 5 (Robinson Dep.) at 67-70; Ex. 11 (Memorandum from David Robinson, Chief of Appeals, to the Acting Commissioner, dated May 23, 2003) (noting that the Appeals Division met its targeted staffing rate of 75 or fewer positions by reducing the number of employees "in the GS-343 and/or related occupations (i.e. 301)").

The Appeals Division's efforts are convincing proof of the defendant's assertion

that the Senior Program Analyst position advertised in Vacancy Announcement APB-03-

138MM was reclassified from a 343 to a 512 series position in conjunction with the

agency wide initiative to reduce the number of 343 series positions.  Absent some

evidence that the defendant does not "honestly believe [ ] in the reasons it offers,"

George, 407 F.3d at 415 (internal quotation marks and citation omitted), the Court "will

not second-guess how [the defendant] weigh[ed] particular factors in the [promotion]

decision," Jackson, 496 F.3d at 709 (citation omitted); see also id. (stating that "courts

must not second-guess an employer's initial choice of appropriate qualifications[,][but]

rather . . . [must] defer to the employer's decision of what nondiscriminatory qualities it

will seek in filling a position") (internal quotation marks, citations, and bracketing

omitted).  Moreover, speculation about an employer's business judgment is insufficient to

create a triable issue.  See Brown v. Brody, 199 F.3d 446, 459 (D.C. Cir. 1999) ("[A]

plaintiff's mere speculations are 'insufficient to create a genuine issue of fact . . . .'")

(quoting Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988);

Hutchinson v. C.I.A., 393 F.3d 226, 229 (D.C. Cir. 2005) ("Hutchinson's claim rests on

speculation, and as the district court concluded, '[p]laintiff's speculation does not create a

genuine issue of material fact . . . .'").

Second, the plaintiff has not offered any evidence of substance to support her

allegation, based solely on the general theory that Ms. Ortega Babers and Mr. Gerber

communicated with each other, that Mr. Gerber knew the Appeals Division could receive

an exclusion from the restrictions of the hiring freeze to provide for another 343 series

position, or that Mr. Gerber only advertised for a 512 series position because the plaintiff

was not qualified for that position, while a white candidate was.  All she offers as support

for this proposition is that Ms. Ortega and Mr. Gerber communicate with each other, Pl.'s

Opp'n at 35 & n. 40, 36, but this is nothing more than mere speculation, and this alone

cannot create a triable fact, Fed. R. Civ. P. 56(3)(2).  And "[a]bsent sufficient evidence of

racial animus, a court may not label an employer's acts as discriminatory, even if the

court might have acted differently had it been the employer."  Adams v. Tennessee Dept.

of Finance and Admin., 179 Fed. Appx. 266, 272 (6th Cir. 2006) (citing Ang. v. Procter

& Gamble Co., 932 F.2d 540, 549 (6th Cir. 2006) (the role of a court in assessing an

alleged Title VII violation "is not to review bad business decisions, or question the

soundness of an employer's judgment.").

      Third, the plaintiff has not provided any evidence to support her allegations that

discrimination was the reason Mr. Geber failed to seek an exception from the freeze, or

that he should have waited until after the freeze expired to announce Vacancy APB-03-

138MM as a GS-343 series position, see Pl.'s Opp'n at 12, and to reiterate again,

speculation alone cannot create triable facts as to these allegations, Fed. R. Civ. P.

56(e)(2).  Instead, the record demonstrates that the agency was purposefully moving

away from generalized 343 series positions and toward more specific, professional series

positions.  Def.'s Mem., Ex. 2 (Ortega Babers Dep.) at 58-62, 66 & Attach. 7

(Memorandum from David Robinson, Chief of Appeals to the Acting Commissioner,

dated April 7, 2003); Ex. 5 (Robinson Dep.) at 67-70 at 62-68 & Attach. 11

(Memorandum from David Robinson, Chief of Appeals, to the Acting Commissioner,

dated May 23, 2003).  "[I]t is not enough for the plaintiff to show that a reason given for

a job action is not just, or fair, or sensible[,]"  Fischbach v. District of Columbia Dep't of

Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996), as courts are without authority to "'second guess an employer's personnel decision absent demonstrably discriminatory motive,' " id. at 118 (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)). "Consistent with the courts' reluctance to become involved in micromanagement of everyday employment decisions, the question before the court is limited to whether [the plaintiff] produced sufficient evidence of . . . discrimination, not whether [s]he was treated fairly. . . ." Forman, 271 F.3d at 291 (citations omitted); see also Fischbach, 86 F.3d at 1183 (A plaintiff "must show that the explanation given is a phony reason."). No such evidence has been proffered by the plaintiff.

Finally, the plaintiff's assertion that based on her qualifications and service as the Technical Analyst Program Coordinator for four years, she would have been selected for the vacancy but for Gerber's discriminating actions, Pl.'s Opp'n at 24, 27, 32, also lacks evidentiary foundation. Although the plaintiff asserts that she is more qualified than Ms. Jones because of her four year tenure as the Technical Analyst Program Coordinator, whereas Ms. Jones served in the position for only one year, the plaintiff does not dispute that Ms. Jones had more than ten years experience as a GS-512 employee, a qualification the defendant required for the Senior Program Analyst position advertised in Vacancy Announcement APB-03-138MM.[9] Further, "[t]he fact that an employer based its ultimate hiring decision on one or more specific factors encompassed within a broader and more general job description does not itself raise an inference of discrimination

_____

[9] To the extent the plaintiff is asserting that the position should have been classified as a 930 series position, she has not provided any evidence that she would have been qualified for such position at the GS-14 grade, including failing to show that she had been in a grade GS-13 level 512 or the 930 series position for at least one year. Pl.'s Opp'n at 12 n.17

sufficient to overcome summary judgment." <u>Jackson</u>, 496 F.3d at 709.  "Short of finding that the employer's stated reason [for its selection decision] was indeed a pretext [for unlawful discrimination,] . . . the [C]ourt must respect the employer's unfettered discretion to choose among qualified candidates."  <u>Fischbach</u>, 86 F.3d at 1183 (citations omitted) (emphasis added).

For all of these reasons, the Court is compelled to find that the plaintiff has not "set forth specific facts showing that there is a genuine issue for trial" as required by the Federal Rules with regard to the defendant's decision to select Sheila Jones for the Senior Program Analyst position.  <u>See</u> Fed. R. Civ. P. 56(e)(2).  Accordingly, the defendant's motion for summary judgment must be granted.

## IV.  CONCLUSION

Based on the foregoing reasons, the defendant's motion for summary judgment is **GRANTED** and this case is dismissed.[10]

---

[10] An order consistent with this memorandum opinion was filed on September 28, 2007.